IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

RICKY TAYLOR,         )
                      )
    Plaintiff,        )
                      )
v.                    )     No. 13-2216-STA-dkv
                      )
PATRICK R. DONAHOE,   )
POSTMASTER GENERAL of the U.S. )
Postal Service,       )
                      )
    Defendant.        )

---

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Before the Court is Defendant Patrick R. Donahoe's Motion for Summary Judgment (ECF No. 19), filed on June 16, 2014. Plaintiff Ricky Taylor filed a Response in Opposition to the Motion (ECF No. 23), to which the Defendant filed a Reply (ECF No. 32). For the reasons set forth below, Defendant's Motion is **DENIED**.

## BACKGROUND

### I. Plaintiff's Dismissal

Plaintiff Ricky Taylor alleges that the Defendant unlawfully dismissed him from his job for engaging in prior protected activity under Title VII of the Civil Rights Act of 1964. (Pl.'s Compl. ¶ 27–28, ECF No. 1). From 1995 until his termination in May 2012, Taylor was employed as a city carrier at the East/Lamar Annex of the United States Postal Service. (Def.'s Statement of Undisputed Facts ¶ 1, ECF No. 23-1). On April 30, 2012, the Postal Service issued Plaintiff a Notice of Proposed Removal. (*Id.* ¶ 2). In the notice, the Postal Service charged that Taylor "expanded [his] street time, and worked unauthorized overtime" on 36 occasions from

1

January 11, 2012, to April 11, 2012. (*Id.* ¶ 2).[1] On May 24, 2012, Postmaster Tracy Mofield issued a "Letter of Decision – Removal" to Taylor, terminating Taylor from his employment with the Postal Service. (*Id.* ¶ 3).

## II. Postal Service Overtime Practices

Some of Taylor's previous discipline and the infractions for which he was allegedly fired are based on "unauthorized overtime." The Postal Service tasks carriers with casing and delivering a specific amount of mail on a specified route in a specified amount of time. (Def.'s Mem. Supp. Mot. for Summ. J. 13, ECF No. 19-2). The Postal Service sets time standards for completing delivery by generating a Route/Carrier Daily Performance/Analysis Report that projects the amount of time needed to complete a route. (*Id.*). This Analysis Report takes into account the amount of the day's mail and the unique characteristics of the carrier's route. (*Id.*). When a carrier like Taylor believes that he will need more time than allotted to complete delivery, he is required to consult with a morning supervisor and complete a "Form 3996" requesting "auxiliary assistance," which the supervisor may or may not authorize. (Def.'s Statement of Undisputed Facts ¶ 20).[2] If, while on the route, the carrier experiences unanticipated difficulty in completing delivery in a timely manner, he or she is required to call the Station and request help or authorization of overtime. (*Id.* ¶ 21). The supervisors at the Station have the discretion to send another carrier to help complete the route and to authorize or not authorize overtime. (*Id.*). Calls to the Station are recorded in the "Station Call Back Log,"

---

[1] Although Taylor does not dispute what the Notice of Proposed Removal contains, Taylor does dispute that he "unilaterally *expanded* his 'street time'" and "that the additional time taken to complete his delivery route was 'unauthorized.'" Pl.'s Responses to Def.'s Statement of Undisputed Facts ¶ 2, ECF No. 23-1. This dispute stems from what Taylor alleges was inconsistent execution of USPS policies and confusing directions from supervisors.

[2] Taylor argues that carriers, supervisors, and management did not consistently follow this practice at the East/Lamar Station while Monica Lipford was Station Manager.

which lists a "Reason for Call Back" and the manager's instructions in light of the carrier's request. (*Id.* ¶ 25). The Call Back Log for the period of January 11, 2012, through April 11, 2012, shows that Taylor called the Station 16 times informing a manager that he would need additional time.[3] Although these are the stated procedures of the USPS, Taylor argues that they were almost never followed by Lipford.[4] Taylor alleges that other similarly situated carriers did not receive the same discipline based on these policies, and therefore, Lipford used the sparingly followed procedures as pretext for retaliation to recommend Taylor's termination.

**III. Timeline of Discipline and Protected Activity**

Station Manager Monica Lipford has been Taylor's supervisor for the relevant period, and Taylor claims that the Defendant, through and because of Lipford's conduct, unlawfully terminated him. A timeline of events is necessary to understand both parties' arguments.[5] On February 15, 2011, Taylor was issued a 14-day suspension based on alleged unauthorized overtime on two dates. (Pl.'s Response in Opp'n 3, ECF No. 23). Taylor challenged this suspension by filing a grievance, which was denied. (Def.'s Statement of Undisputed Facts ¶ 7). On February 24, 2011 Taylor was placed on "Emergency Placement Off-Duty" status after Lipford accused him of leaving his motor vehicle running while away from the vehicle, a violation of Postal Service policies. (Pl.'s Response in Opp'n 3). Taylor filed a grievance on

---

[3] Taylor does not dispute the contents of the Call Back Log but does dispute that it "is used on a consistent basis [and] that the Log represents an accurate account of all calls made by [c]arriers." Pl.'s Responses to Def.'s Statement of Undisputed Facts ¶ 22.

[4] Taylor also objects to the Call Back Log as "hearsay because it is incomplete, shows inconsistencies of dates and times as to infer those penciled notations that are legible were not made contemporaneously and are untrustworthy." *Id.* ¶ 2. The Court reserves ruling on this objection, but it does consider the alleged inconsistencies below.

[5] The dates set forth in this section are approximate, as the Plaintiff and the Defendant consistently cite different dates for numerous EEO Complaints, grievances, and suspensions.

3

this discipline, and on March 26, 2011, a "Dispute Resolution Team" determined that Lipford's action was excessive. (Def.'s Statement of Undisputed Facts ¶ 7). On March 30, 2011, Lipford issued a 14-day suspension based on the same incident.[6] Taylor filed a formal EEO Complaint on May 4, 2011, alleging that Lipford's actions amounted to discrimination, but Taylor "did not pursue this complaint." (*Id.*).

In October 2011, Lipford authorized a Notice of Proposed Removal for Taylor based on unauthorized overtime and missed scans. (Def.'s Statement of Undisputed Facts ¶ 9). On October 21, 2011, the Postmaster issued a Letter of Decision on the Proposed Removal, terminating Taylor. (Pl.'s Response in Opp'n 4). Taylor filed a grievance on this decision and was successful. (Def.'s Mem. in Supp. 3). As a result, the Notice of Proposed Removal and Letter of Decision were "rescinded and purged" from Taylor's file. (Pl.'s Response in Opp'n 4). Then, on November 14, 2011, Plaintiff filed an informal EEO complaint alleging race, religion, sex, and age discrimination with respect to the October 2011 Notice of Proposed Removal and subsequent Letter of Decision. (Def.'s Statement of Undisputed Facts ¶ 8). An EEO Dispute Specialist made an inquiry into the situation and talked to Lipford to arrange a meeting with Taylor. (*Id.* ¶ 10–11). Taylor presents evidence that in December 2011, Lipford knew of Taylor's EEO Complaint. (Pl.'s Response in Opp'n 13). Taylor filed a formal administrative employment discrimination complaint on December 24, 2011, asserting that the Notice of Proposed Removal and Letter of Decision issued in October 2011 were the result of discrimination. (Def.'s Statement of Undisputed Facts ¶ 13). During her investigation of this

---

[6] The parties dispute the reason for this action. Although Taylor seems to imply that Lipford was disciplining Taylor twice for the same reason, the Defendant explains that the "Step B Decision" made by the Dispute Resolution Team cited Lipford's failure to immediately suspend Taylor without pay as the reason for overturning the decision. Thus, Defendant argues, Lipford was now issuing a different, appropriate form discipline.

matter, the EEO Dispute Specialist conducted interviews and ultimately determined that the complaint was moot in light of the reversal of the October Letter of Decision. (Def.'s Statement of Undisputed Facts ¶ 8, 10–12).

The case before the Court was set in motion on April 30, 2012, when Supervisor Danny Andrews issued a proposed Notice of Proposed Removal to Plaintiff for alleged unauthorized overtime. (*Id.* ¶ 16). Monica Lipford signed the Notice of Proposed Removal as the "concurring official," but Taylor presents evidence that Andrews was not involved with the decision. (*Id.*; Pl.'s Response in Opp'n 6). On May 24, 2012, Postmaster Tracy Mofield affirmed the Notice of Proposed Removal in a Letter of Decision, terminating Taylor. (Pl.'s Response in Opp'n 7). Taylor then exhausted all of his administrative remedies and filed his Complaint in this action. (Pl.'s Compl., ECF No. 1).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that a party is entitled to summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[7] In reviewing a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party,[8] and it "may not make credibility determinations or weigh the evidence."[9] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a

---

[7] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 360 (6th Cir. 2014).

[8] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[9] *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014).

genuine issue for trial."[10] It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[11] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[12] When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[13] In this Circuit, the nonmoving party must "put up or shut up" as to the critical issues of the claim.[14] The Court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[15]

## **ANALYSIS**

An employer violates 42 U.S.C. § 2000e-3(a) when he discriminates against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."[16] Taylor claims that Lipford knew about Taylor's EEO Complaints and recommended his firing with discriminatory animus based

---

[10] *Celotex*, 477 U.S. at 324.

[11] *Matsushita*, 475 U.S. at 586.

[12] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[13] *Id.* at 251–52.

[14] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[15] *Celotex*, 477 U.S. at 322.

[16] 42 U.S.C. § 2000e-3(a).

6

on that knowledge. Taylor alleges that although Lipford was not the ultimate decision maker, her discriminatory animus is imputed to the decision maker through the "cat's paw theory." The Defendant argues that because Lipford did not make the decision to terminate Taylor, Lipford's knowledge and subsequent actions have no causal connection to Taylor's firing. Furthermore, the Defendant argues that it terminated Taylor for a legitimate, non-discriminatory reason.

## I. Cat's Paw Liability

At the outset, the Court must frame its analysis around the cat's paw theory of liability. If the theory applies in this case, then the Court must analyze Taylor's claims as against the allegedly biased subordinate rather than the "ultimate decision maker" who rubber-stamped the biased subordinate's decision.[17] The theory is founded on tort principles of agency and causation. The Sixth Circuit has further explained the theory:

> When an adverse hiring decision is made by a supervisor who lacks impermissible bias, but that supervisor was influenced by another individual who was motivated by such bias, this Court has held that the employer may be held liable under a 'rubber stamp' or 'cat's paw' theory of liability.[18]

The Defendant argues that Postmaster Tracy Mofield, who signed the Letter of Decision terminating Taylor on May 24, 2012, did not know of Taylor's prior protected activity; therefore, Mofield could not have been motivated by such protected activity when he made his decision. But when the decision maker relies on a supervisor's tainted, biased information and conducts no

---

[17] The Court fully discusses Lipford's alleged retaliatory animus below. Here, the Court only determines whether the cat's paw theory may apply.

[18] *Arendale v. City of Memphis*, 519 F.3d 587, 604 n.13 (6th Cir. 2008) (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 355 (6th Cir. 1998)).

7

independent investigation to sever the causal chain, he acts "as the conduit of [the supervisor's] prejudice—his cat's paw."[19]

Shortly after Mofield's appointment as Postmaster for the Memphis District of the USPS in May 2012, he considered the proposed termination of Taylor. Mofield had no communication with Lipford or Taylor and claims that his review was "thorough, unbiased, and completely independent."[20] He was unaware of any prior EEO activity, and it appears that he only considered (1) the Notice of Proposed Removal, (2) Taylor's prior 14-day suspension dated February 15, 2011, (3) Taylor's 18 years of service, and (4) Taylor's status as "preference eligible." Thus, Defendant argues that Lipford's alleged retaliatory animus cannot be imputed to Mofield because he had no contact with Lipford in making the decision. The Supreme Court, in a military-discrimination case under the Uniformed Services Employment and Reemployment Act (USERRA), determined that this kind of argument

> would have the improbable consequence that if an employer isolates a personnel official from its supervisors, vests the decision to take adverse employment actions in that official, and asks that official to review the employee's personnel file before taking the adverse action, then the employer will be effectively shielded from discriminatory acts and recommendations of supervisors that were *designed and intended* to produce the adverse action.[21]

The USERRA contains similar language to Title VII's status-based discrimination provision; however, Title VII's *antiretaliation* provision is akin to the Age Discrimination in Employment

---

[19] *Madden v. Chattanooga City Wide Serv. Dep't*, 549 F.3d 666, 678 (6th Cir. 2008) (alteration in original) (quoting *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 877 (6th Cir. 2001)).

[20] Declaration of Tracy Mofield, ECF No. 19-5.

[21] *Staub v. Proctor Hosp.*, 1312 S. Ct. 1186, 1193 (2011) (discussing causation under the Uniformed Services Employment and Reemployment Rights Act, a statute "very similar to Title VII").

8

Act's language.[22] Therefore, the Supreme Court concluded that Title VII retaliation claims, like ADEA claims, "require proof that the desire to retaliate was the but-for cause of the challenged employment action."[23] The Court briefly explains the causation standard here because the Sixth Circuit has opined that but-for causation should also apply to the cat's paw theory.[24]

In light of this standard, if the information upon which Mofield relied was tainted as a part of a "discriminatory information flow,"[25] and such discriminatory information was the but-for cause of Taylor's termination, then Mofield's lack of discriminatory intent cannot sever the causal chain. If it were clear that Mofield based his "decision on an independent investigation, 'any causal link between the subordinate's retaliatory animosity and the adverse action'" would be severed.[26] But Mofield's complete reliance upon the allegedly tainted information bolsters the proposition that retaliatory animus may be imputed to him.

Taylor's 18 years of service and status as "preference eligible" could only have helped him during Mofield's review. Therefore, the Court must analyze whether the Notice of Proposed Removal or the February 15, 2011 suspension were tainted by Lipford's alleged retaliatory animus. First, the Court notes that although Taylor challenged the February 15, 2011

---

[22] *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013) (citing *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 176 (2009))

[23] *Id.*

[24] *Goodsite v. Norfolk S. Ry.*, No. 13-4033, 2014 U.S. App. LEXIS 16496, at *37 n.7 (6th Cir. Aug. 16, 2014) (citing *Bishop v. Ohio Dep't of Rehab. & Corr.*, 529 F. App'x 685, 699–700 (6th Cir. 2013) (McKeague, J., dissenting)). The Court discusses the causation standard in detail below.

[25] *See Madden v. Chattanooga City Wide Serv. Dep't*, 549 F.3d 666, 678 (6th Cir. 2008).

[26] *Minevich v. Spectrum Health-Meier Heart Ctr.*, 1 F. Supp. 3d 790, 806 (W.D. Mich. 2014) (quoting *Roberts v. Principi*, 283 F. App'x 325, 333 (6th Cir. 2008)).

suspension,[27] the events leading up to and allegedly causing the Notice of Proposed Removal issued by Lipford form the real basis for Taylor's retaliation claims. Taylor mostly presents evidence that the Notice of Proposed Removal was tainted by Lipford's alleged retaliatory animus. Thus, in ruling on this Motion, the Court must analyze whether Lipford's decision in issuing Notice of Proposed Removal was retaliatory,[28] and whether Mofield, in relying on that decision, should be "'held liable for a subordinate supervisor's discriminatory animus.'"[29]

## II. Retaliation Claims Under Title VII

Taylor attempts to establish his claim by proffering circumstantial evidence that supports an inference of retaliation. When a plaintiff relies on circumstantial evidence of retaliation, the Court applies the burden-shifting analysis set forth in the Supreme Court's opinions in *McDonnell Douglas* and *Burdine*.[30] Under this framework, the plaintiff has the initial burden to establish a prima facie case of retaliation. If the plaintiff establishes his prima facie case, the burden "shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for

---

[27] Even the filing of a grievance can constitute protected conduct under Title VII. *See Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579–580 (6th Cir. 2000) ("The Equal Employment Opportunity Commission ("EEOC") has identified a number of examples of 'opposing' conduct which is protected by Title VII, including complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices . . . .").

[28] Supervisor Danny Andrews "issued" the Notice of Removal; Lipford was the "concurring official" as the Station Manager. But Andrews stated that he "was not a part of the decision process," leaving Lipford as the real decision maker. *See* EEO Investigative Aff. of Danny Andrews, ECF No. 30-16.

[29] *Goodsite*, 2014 U.S. App. LEXIS 16496, at *37 n.7.

[30] *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 544 (6th Cir. 2008) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981)).

its actions."[31] Finally, if the employer produces evidence of a valid nondiscriminatory reason, then the plaintiff "must demonstrate by a preponderance of the evidence that the legitimate reason offered by the defendant was not its true reason, but instead was a pretext designed to mask retaliation."[32]

### A. Prima Facie Case

To establish a prima facie case of retaliation, Taylor must show that

> "(1) he engaged in activity protected by Title VII; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was 'materially adverse' to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action."[33]

The burden of establishing a prima facie case "is minimal; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity."[34] Here, the Defendant does not dispute that Taylor engaged in protected activity or that it fired Taylor. Instead, the Defendant argues Taylor has not satisfied his burden because (1) Taylor cannot establish that the decision maker knew that Taylor had engaged in protected activity, and (2) Taylor cannot establish a causal connection between his protected activity and the adverse action.

---

[31] *Id.*

[32] *Id.* (citing *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 860 (6th Cir. 1997)).

[33] *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (citing *Jones v. Johanns*, 264 F. App'x 463, 455 (6th Cir. 2007)).

[34] *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007) (citing *Avery Dennison Corp.*, 104 F.3d at 861).

## 1. Knowledge of Protected Activity

Generally, a plaintiff must establish that the person who made the decision to terminate him knew of his protected activity. As described above, however, because Mofield relied on the allegedly tainted information, the Court must analyze Lipford's knowledge of Taylor's prior protected activity. Taylor asserts that Lipford knew of his previous EEO complaints, and in its Reply, the Defendant makes no real argument to the contrary. Plaintiff presents an EEO Witness Affidavit that Lipford signed on May 25, 2011. Lipford's statement in the affidavit references "the back pay for Ricky Taylor" in connection with an EEO Complaint.[35] Furthermore, the Defendant has not objected to the testimony of Abdul Maalik Buluu, a carrier at the Station and Taylor's union representative during certain grievance processes, who stated that during a conversation in late 2011, Lipford acknowledged her awareness of Taylor's EEO complaint. Buluu also testified that in December 2012, Lipford informed Taylor and Buluu that EEO Investigator Barbara Brewer wanted to talk to them via video conference in Lipford's office. This purportedly related to one of Taylor's EEO complaints alleging that Lipford had unlawfully discriminated against him. Although Lipford apparently denied any knowledge in an interrogatory, the Court must view the facts in the light most favorable to Taylor. Thus, Taylor has established for the purposes of this motion that Lipford had knowledge of Taylor's protected EEO complaints.

---

[35] The Defendant has not objected to the EEO Complaint under Federal Rule of Evidence 56(c)(2) despite the lack of any sworn statement proving that the document is what it purports to be. The Court does not decide the ultimate admissibility of this document or any others; however, the Court finds for the purposes of this motion that an admissible form of each document is likely available to be introduced at trial. Thus, the Court will consider the evidence.

## 2. Causal Connection

At the prima facie stage, Taylor must "proffer evidence sufficient to raise the inference that [his] protected activity was the likely reason for the adverse action."[36] The proximity in time between an employer's learning of protected activity and taking adverse action may raise an inference of causation:

> Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.[37]

Viewing the facts in the light most favorable to the Defendant, it appears that Lipford learned of protected activity as late as December 2, 2011. The EEO Complaint at issue was dismissed on February 3, 2013. The Notice of Proposed Removal—detailing Lipford's decision to terminate—was issued on April 30, 2012.

Although the passage of time—somewhere between four and five months—is not short enough in itself to establish prima facie causal connection, a later incident satisfies Taylor's prima facie burden.[38] Taylor states that on April 17, 2012, two weeks before the issuance of the

---

[36] *Avery Dennison Corp.*, 104 F.3d at 861 (quoting *Zanders v. Nat'l R.R. Passenger Corp.*, 104 F.2d 1127, 1134 (6th Cir. 1990)).

[37] *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008).

[38] The Defendant does not respond to Taylor's description of this event, which Taylor described during a deposition. Instead, in its Reply, the Defendant generally rebuts Taylor's arguments that Lipford was a "petulant and retaliatory" manager. *See* Def.'s Reply 2–3, ECF

Notice of Proposed Removal, he called the Station to request extra time to complete delivery. Lipford told the Plaintiff to be back by 4:00 p.m. Taylor apparently responded, "Okay," and hung up the phone. Minutes later, Lipford appeared on Taylor's route and began "screaming at the top of her lungs," telling Taylor that he would "have to see an arbitrator to get his job back."[39] In analyzing the prima facie causation element, the Court draws the reasonable inference that Lipford's comment about "arbitration" was referring to Taylor's filing of a protected action and Taylor's understanding of the grievance process. In its Reply, the Defendant has not given the Court any facts to rebut what happened during this incident. Thus, Taylor has met his burden of establishing a prima facie case by showing some temporal proximity "along with other evidence of retaliatory conduct."[40]

### B. Nondiscriminatory Justification

Taylor having established a prima facie case, "the burden then shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for its actions."[41] The Defendant has satisfied its burden. The Notice of Proposed Removal issued to the Plaintiff charged Taylor with violating the "Postal Service Standards of Conduct—Obedience to Orders." This, Defendant explains, refers to Taylor's failure to obey his supervisor's instructions by expanding his "street time"—the time allotted for delivery—and incurring unauthorized overtime. The Notice of

---

No. 32. Here, the Court does not consider Taylor and his co-workers' impressions of their supervisor. But at this stage, the Court must view the evidence of the incident in the light most favorable to Taylor, especially since the Defendant has offered no alternate version of the facts.

[39] The entire incident is found in Taylor's deposition. Depo. of Taylor 88–90, ECF No. 25-1.

[40] *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007) (citing *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 737 (6th Cir. 2006)).

[41] *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 544 (6th Cir. 2008) (citing *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 862 (6th Cir. 1997)).

Proposed Removal lists 36 instances during a three-month period in which Taylor allegedly worked unauthorized overtime.

### C. Pretext

The Defendant has established a legitimate, non-discriminatory reason for terminating Taylor. Thus, "[i]n order to prevail on a claim of retaliation . . . the plaintiff must prove not only that the defendant's proffered reason was a pretext, but that the real reason for the employer's action was intentional retaliation."[42] These two inquiries are intertwined: in attempting to prove that a proffered reason is false, the plaintiff often bolsters the inference of intentional retaliation.[43] Taylor first argues that that the Defendant's reason was pretext. Plaintiffs can rebut a defendant's proffered reason and demonstrate pretext by showing "(1) the employer's stated reason for terminating the employee has no basis in fact, (2) the reason offered for terminating the employee was not the actual reason for the termination, or (3) the reason offered was insufficient to explain the employer's action."[44]

#### 1. Reason Offered Was Insufficient

Although Taylor attempts arguments under the first two rebuttal methods, the majority of the evidence he presents seeks to establish that the Defendant's proffered reason was insufficient to explain the employer's action.[45] Taylor compares his "unauthorized overtime" to other

---

[42] *Id.* (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).

[43] *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 147 (2000) (citing *St. Mary's Honor Ctr.*, 502 U.S. at 511).

[44] *Imwalle*, 515 F.3d at 545 (citing *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).

[45] Because the Court holds that Taylor has proved pretext by the third method such that the issue makes pretext a triable issue, the Court does not discuss Taylor's evidence supporting the "no-basis-in-fact" or "not-the-actual-reason" methods.

carriers' and the Defendant's varying discipline against those carriers. The Court finds that the evidence offered by both parties presents a sufficient disagreement to require submission to a jury. In other words, a reasonable juror could find that the Defendant's reason was insufficient to explain the termination. At the pretext stage, courts "look to similarly situated employees not to evaluate the employer's business judgment, but to inquire into the employer's 'motivation and intent' to determine whether the employer was 'motivated by retaliation.'"[46]

At the outset, the Court notes that Lipford's denial of overtime requests is not in itself evidence of retaliatory discrimination, but Lipford's alleged differential treatment of Taylor compared to other carriers is relevant to Taylor's rebuttal proof. According to the Notice of Proposed Removal, Taylor incurred unauthorized overtime 36 times from January 2012 to April 2012. During similar spans of time, Taylor presents evidence that other carriers incurred similar amounts of overtime, but were not similarly disciplined. Carriers Tommy Fifer, Gentry Delaney, and Abdul-Maalik Buluu incurred 5, 21, and 31 instances of unauthorized overtime, respectively. Although Taylor incurred more overtime than all three of these carriers, Buluu and Delaney's missing overtime transactions create some cause for concern. The Defendant attempts to dispel the disparity by arguing that Delaney's incursion of unauthorized overtime is not substantial, and thus Delaney is not similarly situated. Regarding Buluu's unauthorized overtime, the Defendant argues that Buluu was issued a "Letter of Warning" for his missteps because his record reflected a previous 7-day suspension,[47] as opposed to Taylor's previous 14-day suspension. Furthermore,

---

[46] *Ladd v. Grand Trunk W. R.R.*, 522 F.3d 495, 503 (6th Cir. 2009) (quoting *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987)).

[47] *See* Notice of Suspension of Buluu, ECF No. 31-10. Although the Defendant asserts in its Reply that "[t]here is no indication that Mr. Buluu had previous active discipline at the time the Letter of Warning was issued which would have warranted a suspension," Taylor provides the Notice of Suspension, to which the Defendant lodges no objection.

Defendant argues, Buluu incurred shorter individual amounts of overtime in his 31 instances of unauthorized overtime.

Neither party disputes that the USPS operates by a system of "progressive discipline." The Defendant argues that its termination of Taylor and its discipline of the other carriers are consistent with this system. The Court does not inquire into the validity of the system, but its application to two similarly situated individuals—Taylor and Buluu—is instructive to the Court's examination of Lipford's motivation. Comparing Lipford's treatment of Taylor to her treatment of Buluu, the Court determines that Taylor has presented enough evidence to pass summary judgment. Buluu had a previous 7-day suspension, incurred 31 instances of unauthorized overtime, and yet he was issued a Letter of Warning. Taylor, who incurred 6 more instances of overtime and had a previous 14-day suspension, was terminated. Furthermore, Taylor has presented testimony of witnesses describing the continual allowance of overtime at the Station and the subsequent lack of discipline. The Defendant correctly asserts that employees' misunderstanding of overtime policies does not relieve their culpability. Moreover, issuing different levels of discipline for different offenders under a system of progressive discipline does not automatically prove Taylor's rebuttal. But Buluu's different treatment, combined with evidence of the sporadic records of the "Station Call Back Log,"[48] sufficiently establishes, for purposes of summary judgment, that a reasonable juror could find that the proffered reason of incurred overtime was a pretext for retaliation.

---

[48] The Defendant points out that "the Plaintiff has not asserted that he did not incur overtime as claimed in the Notice of Proposed Termination." Def.'s Reply 5, ECF No. 32. But Taylor has shown in his Response that Lipford's notations in the Call Back Log, compared with the instances listed in the Notice of Removal, cast some doubt on the consistency of Lipford's actions.

### 2. But-for Causation

In his Response, Taylor claims that the Defendant misstated the but-for causation standard in its Memorandum in Support. The Defendant cited the correct rule from *University of Texas Southwestern Medical Center v. Nassar*. In *Nassar*, the Supreme Court "define[d] the proper standard of causation for Title VII retaliation claims."[49] The Court first explained that Title VII status-based discrimination under 42 U.S.C. § 2000e-2 has a different causation standard than Title VII's retaliatory discrimination under 42 U.S.C. § 2000e-3(a).[50] Then, comparing the "because" language in Title VII's retaliatory discrimination provision to the ADEA's similar language, the Court concluded "that Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."[51] In other words, "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in §2000e-2(m) [for status-based discrimination]. This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."[52]

The but-for causation standard for retaliation should also affect the cat's paw theory. The Sixth Circuit intimated in a footnote that after *Nassar*, the cat's paw theory "must be modified in Title VII retaliation cases."[53] In cat's paw cases, then, a court should determine whether the biased supervisor's wrongful actions were the but-for cause of the termination. In

---

[49] *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2524 (2013).

[50] *Id.*

[51] *Id.* at 2529 (citing *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 176 (2009)).

[52] *Id.* at 2533.

[53] *Goodsite v. Norfolk S. Ry.*, No. 13-4033, 2014 U.S. App. LEXIS 16496, at *37 n.7 (6th Cir. Aug. 16, 2014).

most cases, this would present a substantial hurdle for the plaintiff to overcome, especially if the ultimate decision maker conducted an independent investigation of the facts. Such an investigation could easily sever the chain of causation by showing the decision maker's legitimate, independent basis for the adverse action. This reasoning comports with the Supreme Court's opinion in *Nassar*, which discussed not only the textual basis for but-for causation in Title VII retaliation claims, but also the negative effects of using a lesser standard: "[L]essening the causation standard could also contribute to the filing of frivolous claims, which would siphon resources from efforts by employer, administrative agencies, and courts to combat workplace harassment."[54] If courts were to apply a lessened causation standard like the "motivating factor test," complainants might be more inclined to forestall lawful employer action by quickly filing an EEO complaint and then alleging, after the lawful adverse action, that retaliation was a motivating factor, easily bypassing the summary judgment stage.[55] Furthermore, "[i]t would be inconsistent with the structure of Title VII to so raise the costs, both financial and reputational, on an employer whose actions were not in fact the result of any discriminatory or retaliatory intent."[56] This case is unique in that Mofield admittedly conducted no investigation and instead rubber-stamped a decision actually made by Lipford. Therefore, applying the but-for causation analysis to the cat's paw theory proffered here does not affect the outcome of the decision.

At the summary judgment stage, Taylor must present enough evidence such that a reasonable juror could find that Lipford's desire to retaliate, rather than Taylor's unauthorized overtime, was the but-for cause. Taylor has already met the burden of showing that the

---

[54] *Nassar*, 133 S. Ct. at 2531–32.

[55] *See id.* at 2532.

[56] *Id.*

19

Defendant's proffered reason was insufficient. Furthermore, in light of Lipford's apparent knowledge of EEO claims, her statement that Taylor "would need to see an arbitrator" to get his job back, and the differential treatment of similarly situated employees, the Court finds that a reasonable juror could determine that Lipford's desire to retaliate against Taylor for his prior protected activity was the but-for cause of termination.

## CONCLUSION

Taylor has established a prima facie case and sufficiently rebutted the Defendant's proffered justification for the purposes of summary judgment. Therefore, the Defendant's Motion for Summary Judgment is **DENIED**.

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: November 7, 2014.