# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| **RICKY TAYLOR,** | ) |
| | ) |
|        **Plaintiff,** | ) |
| | ) |
| v. | )     Case No. 13-cv-2216-STA |
| | ) |
| **MEGAN BRENNAN, Postmaster** | ) |
| **General of the United States Postal Service,** | ) |
| | ) |
|        **Defendant.** | ) |

## ORDER REGARDING BACK PAY AND PREJUDGMENT INTEREST

On March 12, 2015, the jury in this matter found that the Defendant, through Supervisor Monica Lipford, illegally retaliated against Plaintiff Ricky Taylor because of his prior protected activity when his job was terminated. The jury awarded the Plaintiff $125,000 in compensatory damages. The Court instructed the jury not to consider back pay or reinstatement in their determination of compensatory damages, as those restitutionary measures are within the discretion of the Court. On March 19, 2015, the Court entered an Order awarding back pay and reinstatement "in accordance with the jury's finding of liability, 42 U.S.C. § 1981a(a)(1), and 42 U.S.C. § 2000e-5(g)." (ECF No. 61). Five days later, the Plaintiff filed his Motion for an Award of Prejudgment Interest. (ECF No. 62). The Defendant responded in opposition on April 7, 2015. (ECF No. 65).

Rather than ruling on piecemeal motions regarding the calculation of back pay, the Court directed the parties to confer as to calculation of back pay and submit memoranda addressing any disputed issues. (ECF No. 66). The Court then held a hearing on May 26, 2015, at which the

1

parties noted their agreement on a majority of issues regarding back pay and prejudgment interest. Nevertheless, they detailed five disputed issues regarding back-pay calculations that require resolution by Court-order. Those issues are addressed in this Order.

**I. Back Pay**

The jury found that the Defendant illegally retaliated against Taylor, and therefore Taylor is entitled to back pay. Above all, "[a] victim of discrimination 'is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed.'"[1] An award of back pay "should completely redress the economic injury the plaintiff has suffered as a result of discrimination. It should include the salary, including any raises, which plaintiff would have received but for the discrimination, as well as sick leave, vacation pay, pension benefits and other fringe benefits she would have received but for discrimination."[2] Finally, "[a]ny ambiguity in what the claimant would have received but for discrimination should be resolved against the discriminating employer."[3] Although the parties agree on many additions to and deductions from the gross award of back pay, the following issues are in dispute.

**A. Unemployment Benefits**

Generally, "[u]nemployment benefits . . . should not be deducted from backpay awards."[4] The Defendant acknowledges this general rule but argues that unemployment compensation for federal government employees, including employees of the United States Postal Service, is "governed by 5 U.S.C. § 8501 et seq.," which mandates that employing agencies pay 100% of

---

[1] *United States v. City of Warren*, 138 F.2d 1083, 1097 (6th Cir. 1998) (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418–19 (1975)).

[2] *Gutzwiller v. Fenik*, 860 F.2d 1317, 1333 (6th Cir. 1988).

[3] *Rasimas v. Mich. Dep't of Mental Health*, 714 F.2d 614, 628 (6th Cir. 1983).

[4] *Id.* at 627.

2

the compensation through a self-insurance system. Therefore, the Defendant argues that the back-pay award should be offset by the amount of unemployment benefits actually paid by the Defendant.[5] The Defendant cites *Viveros v. Donahoe*, in which the Central District of California held that there would be "no windfall to the Postal Service if the unemployment payments offset [the plaintiff's] damage award, since the Postal Service pays both the damage award and unemployment benefits."[6] The court also held that the collateral-source rule, a doctrine not briefed by the parties here, did not apply "since the unemployment benefits [the plaintiff] received were ultimately paid by the Postal Service," rather than a third party.[7] Taylor responds by restating the general rule and pointing out that the Defendant has not produced any evidence to show that it is self-insured 100% with the State of Tennessee or that it actually paid the unemployment compensation. Taylor also states that if his back pay is reduced by unemployment benefits paid by the Postal Service, he should be reimbursed for the amount he contributed to the insurance fund.

Although it appears that the Postal Service indirectly paid at least a portion of Taylor's unemployment compensation, the Court follows the general rule that unemployment compensation should not be deducted from back-pay awards. The Defendant presented some evidence at a hearing showing that the Defendant paid only a portion of the unemployment compensation, but nearly two months after the jury's verdict and more than a month after the Court directed the parties to confer on calculation, the Defendant has not produced information

---

[5] At the May 26, 2012 hearing, the Defendant conceded that the self-insurance system did not pay at least a portion of the unemployment compensation.

[6] *Viveros v. Donahoe*, No. CV 10-08593 MMM, 2012 U.S. Dist. LEXIS 172037, at *31 (C.D. Cal. Nov. 12, 2012).

[7] *Id.* at *30.

sufficient for the Court to deduct unemployment benefits from the award. The ambiguity is resolved in Taylor's favor: unemployment benefits will not be deducted from the back-pay award.

**B. Union Dues**

The Defendant also wishes to deduct $1,941.07 in unpaid union dues to the National Association of Letter Carriers. Taylor disagrees, arguing that the Defendant has put forth no evidence that Taylor's employment was conditioned on his membership in the union. The Court agrees. Deducting union dues would only provide a windfall to the Defendant: if the union dues are owed by Taylor, they are owed to the union, not the Defendant. Furthermore, the union may seek such funds from Taylor if they are rightfully owed to the union. Union dues shall not be deducted from the award of back pay.

**C. Unpaid Overtime**

First, "lost overtime pay 'should be included in back pay'" because it places the victim of discrimination in the situation he would have occupied had discrimination not occurred.[8] At the hearing regarding back pay, the Defendant asserted that Taylor was not on an "overtime desired" list at the time of his termination. Taylor points to his deposition, in which he declared that he was indeed on the overtime desired list. The Court finds the Defendant's argument unpersuasive. Regardless of Taylor's status, he and other employees at the station worked significant overtime before he was terminated. Taylor is entitled to overtime compensation.

Next, the Defendant challenges the calculation of overtime. For purposes of calculating overtime, Taylor attached the Postal Services Employee and Labor Relations Manual to its

---

[8] *United States v. City of Warren*, 138 F.3d 1083, 1097 (6th Cir. 1998) (quoting *Meadows v. Ford Motor Co.*, 510 F.2d 939, 947 (6th Cir. 1975)).

4

memorandum regarding back pay.[9] The Manual provides that "[o]vertime hours . . . are determined by averaging the number of hours that other employees of the office with the same employment status were assigned during the back pay period."[10] Although this method is not dispositive, when combined with Taylor's consistent overtime work before termination, the Court finds the method reasonable. The overtime calculation shall be based on the average number of overtime hours of other workers in the same position and at the same station as Taylor.

### D. Gross-Up

Taylor argues that he is entitled to an additional sum to compensate him for the higher tax penalty he will incur because the back-pay award will come as a lump sum in a single tax year. In other words, in order to avoid a larger tax liability from the lump sum and to replicate receiving the award in three tax years, Taylor believes he is entitled to a "gross-up." The Defendant did not have time to respond, as Taylor first made the argument at the hearing regarding back pay. Furthermore, he did not include the argument in his memorandum.

Taylor cites cases from other circuits that may support a gross-up award. The parties did not brief the issue, which is apparently of the subject of much legal debate.[11] For example, while the Third Circuit allows gross-up tax adjustments,[12] the D.C. Circuit does not, absent

---

[9] *See* Employee and Labor Relations Manual, ECF No. 74-2.

[10] *Id.*

[11] *See* Thomas R. Ireland, *Tax Consequences of Lump Sum Awards in Wrongful Termination Cases*, 17 J. Legal Econ. 51 (2010).

[12] *Eshelman v. Agere Sys., Inc.*, 554, F.2d 426, 441–42 & n.8 (3d Cir. 2009).

"protracted" litigation.[13] As the D.C. Circuit noted, there is an absence of case law supporting a gross-up award, and that is especially true in this Circuit. Furthermore, the method of calculation for a gross-up "becomes increasingly complicated as each additional element of damages or tax complexity is added,"[14] and thus, normally, the party seeking such an award should proffer an expert to make such calculations. Although the Plaintiff has provided his own calculations, the Court cannot award a gross-up based on rudimentary calculations which do not take into account further tax complexity. Furthermore, Taylor did not brief the issue, nor did he cite case law that directly opposes his assertion that gross-ups are allowed "by various circuits." No gross-up shall be awarded.

## III. Prejudgment Interest

Prejudgment interest is a standard award in Title VII discrimination cases, as it is required to make the plaintiff whole.[15] The Defendant's argument that Taylor's compensatory-damages award completely redresses his injury in unavailing: "[t]he purpose of awarding prejudgment interest under Title VII . . . is to compensate victims for both the time value of the lost money as well as for the effects of inflation."[16] The only question, then, is how to calculate an award of prejudgment interest.

---

[13] *See Fogg v. Gonzales* 492 F.3d 447, 455–56 (D.C. Cir. 2007); *Dashnaw v. Pena*, 12 F.3d 1112, 1116 (D.C. Cir. 1994) (Absent an arrangement by voluntary settlement of the parties, the general rule that victims of discrimination should be made whole does not support 'gross-ups' of backpay to cover tax liability. We know of no authority for such relief, and appellee points to none. Given the complete lack of support in existing case law for tax gross-ups, we decline so to extend the law in this case.").

[14] Thomas R. Ireland, *Tax Consequences of Lump Sum Awards in Wrongful Termination Cases*, 17 J. Legal Econ. 51, 62 (2010).

[15] *See United States v. City of Warren*, 138 F.2d 1083, 1096 (6th Cir. 1998).

[16] *Id.* (citing *EEOC v. O'Grady*, 857 F.2d 383, 392 (7th Cir. 1988)).

At the hearing, the parties agreed that if prejudgment interest were awarded, the 52-Week Treasury bill rate would be appropriate. While the Plaintiff seeks prejudgment interest applied to the lump sum of total back-pay, the Defendant argues that "it would be inappropriate to calculate prejudgment interest by simply applying the 52-Week Treasury bill rate to the ascertainable sum of back pay over the course of the entire period from the date of termination until the imposition of judgment."[17] Instead, the Defendant asserts that the amount of interest should be determined by applying the 52-Week Treasury bill rate "as it would have been earned had Plaintiff been drawing a paycheck."[18] The Court agrees, as this application more accurately places Taylor in his rightful position. The Defendant also wishes to subtract the Plaintiff's monthly expenses from the amount upon which prejudgment interest is awarded. That the Plaintiff was no longer working for the Postal Service, however, did not relieve him of his obligation to pay monthly expenses like utilities and rent. Thus, the Court will not exclude such expenses from the award. Prejudgment interest shall be calculated at the 52-week U.S. Treasury bill rate over the relevant period and applied to the back pay award as if Taylor had received standard paychecks. The Court does not have enough information before it to complete the calculation, and the parties have indicated that a ruling on this issue will lead to a joint calculation.

---

[17] Def.'s Resp. to Pl.'s Mot. Prejudgment Interest 2, ECF No. 65.

[18] *Id.*

## **CONCLUSION**

As indicated at the May 26, 2015 hearing, the parties shall have 10 days from the entry of this Order to confer, complete a calculation, and submit a proposed judgment in accordance with this Order. Absent extraordinary circumstances, the Court will not grant an extension of this deadline.

**s/ S. Thomas Anderson**
HON. S. THOMAS ANDERSON
UNITED STATES DISTRICT COURT

Date: June 1, 2015.